WESTERN DIST.
September, 1831.

PALFREY
vs.
MARTIN ET ALS.

Creditors who failed to attend the *concurso* or meeting of creditors, cannot plead ignorance of the law, or want of notice, in order to set aside the proceedings of those who attended & voted for syndics and the terms of the sale of the ceded property.

</div>

---

**PALFREY vs. MARTIN ET ALS.**

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE DISTRICT PRESIDING.

Lands held for a series of years in virtue of a Spanish grant and survey, and which have been confirmed by the United States government, will not be disturbed by adverse claims, evidenced by titles of similar perfections, but later in date; and especially when they do not call for the *locus in quo*, but only for land near and adjoining it.

Claimants who have possessed and made improvements on the disputed premises, will be allowed to claim the benefit of them, although they have been enjoined not to remove them, or had them allowed in the suit evicting them.

The plea of prescription will be considered as contradicted, when the same party alleges they are proprietors in common with the adverse party.

The plaintiffs instituted a possessory action in April, 1829, to recover possession of a tract of land, or island of woods called " *Grose Isle*," in the parish of St. Martin, which they allege is in the illegal possession of the defendants. This island, also called " *Isle Labbé*," contains sixty arpents.

The land in question was granted by the Spanish governor general Miro, who on the 10th of January, 1783, issued an order of survey to the grantee Jean Labbé, and who was put in possession in pursuance thereof. The plaintiffs claim, one as heir, and the others as purchasers, either immediately or mediately, from the grantee. The whole of the grant was confirmed to the successors of Labbé by the American commissioners of land claims by their certificate, dated June 21, 1813. The defendants allege, that Labbé renounced his pretensions to twenty arpents of " *Grose Isle*," retaining only the remaining forty arpents; that the Spanish government in October, 1795–6, granted these twenty arpents so renounced by the former grantee, to Louis Veillon and Pierre Moreau, under and through whom the defendants claim. Both, plaintiffs and defendants, invoke the prescription of ten and thirty years.

The judgment of the District Court found that the whole of the island was surveyed on the 11th of April, 1795, by François Gonsoulin, an authorised surveyor under the Spanish government, for the successors of Labbé and the *proces verbal* signed by all the claimants. Possession was decreed to the plaintiffs. The point mostly contested was the *locus in quo*, or proper place of locating the respective grants. The surveyors seem to have given them entirely separate locations, the correctness of which can only be determined by an inspection of the maps and plats of survey returned in the cause.

WESTERN DIST.
September, 1831.
——————————
PALFREY
vs.
MARTIN ET ALS.

In the progress of the trial the plaintiffs had a restraining order inhibiting the defendants from interfering with the land in controversy or taking any of the improvements from it. This order was made perpetual.

The defendants further alleged that the "Grose Isle," was held in common between them and the plaintiffs, and prayed for a partition. They omitted to set up any claim to the improvements put on the land by them; and no provision was made for them in the judgment. The defendants appealed generally.

*Bowen* and *Brownson*, for the plaintiffs.

1. The plaintiffs and those under whom they claim, have purchased and inherited the land they now set up title to, and have been in possession more than thirty years, and more than ten years with good titles.

2. We show that by the concession to Labbé, from whom the plaintiffs derive title, the Spanish government granted the entire island of woods, which contains the whole of our claim.

3. That when this grant was surveyed by Gonsoulin, he run all round the island of woods to include the quantity granted, and which embraces the entire *locus in quo*, as contended for by the plaintiffs.

*Simon*, for defendants.

1. The island of woodland in dispute having been originally granted to the plaintiffs' ancestor by the Spanish government, as containing sixty arpents in front, *i. e.* having twenty arpents on one side, and forty on the other side, the grantee has subsequently abandoned the twenty arpents.

2. The twenty arpents abandoned by the original grantee have been subsequently granted to the vendors of the defendant.

3. We contend that the island of wood ought to be divided in such way as to give to the grantees of the land around it their proportionate quantity of wood; indeed the division appears to have been made by the Spanish sovereign when he located the original tracts.

WESTERN DIST.
September, 1831.

PALFREY
vs.
MARTIN ET ALS.

*Mathews, J.* delivered the opinion of the court.

In this case the plaintiffs claim title to a tract of land called " *Grose Isle,*" or " Isle Labbé," situated in the parish of St. Martin. They deduce their title regularly down from a certain Jean Labbé who obtained an order of survey for the premises in dispute from the proper officer of the Spanish government, dated on the 10th of January, 1783, and was put in possession thereof in his life time. The inchoate title thus acquired by their ancestor was confirmed to his heirs by the commissioners of the land office of the Western District of the territory of Orleans, on the 21st of June, 1813, and has been regularly transferred from them to the present plaintiffs.

The defendants claim the property in contestation under original titles, very similar in their perfection to those relied on by the plaintiffs, but later in date, and which do not in any manner call for the *locus in quo,* but only for land near or adjoining to it. The court below on an investigation of the evidence of titles set up by the respective parties, gave judgment in favor of the plaintiffs; from which the defendants appealed.

We have examined attentively the grounds on which this judgment seems to be based, and believe it to be correct so far as it settles the titles of the parties litigant.

It seems, however, that the defendants, under a mistaken belief that the land claimed in this suit was their property, had made some improvements thereon by buildings and fences, which they were enjoined not to remove during the pendency of this action. And this injunction having been made perpetual by the final judgment in the cause, the appellants complain of this part of said judgment, as precluding them from a legal investigation, as to their right to remove the materials placed in error on the *locus in quo,* as belonging them, when in truth it turns out to be the property of the appellees. Whether the perpetuation of the injunction would have this effect or not, perhaps is doubtful. But we are of opinion that this right should be left open to discussion, freed from any embarrassment which might be created by making the injunction perpetual.

*Claimants who have possessed and made improvements on the disputed premises, will be allowed to claim the benefit of them, although they have been enjoined not to remove them, or had them allowed in the suit evicting them.*

The prescription pleaded by the defendants is not supported by the evidence of the cause. In truth, it appears to be contradicted by a subsequent part of the answer, wherein they allege themselves to be proprietors in common with the plaintiffs of the island, or woodland in dispute.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed—saving to the defendants their rights (if any they have by law) to require compensation for the permanent improvements which they have made on the land of the plaintiffs: or to remove the materials and appropriate them to their own use: And it is further ordered, adjudged, and decreed, that the appellees pay the cost of this appeal: Those of the court below to be paid by the appellants.